UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HIRAM INVESTMENTS, LLC | CIVIL ACTION |
| VERSUS | NO. 17-11847 |
| HOWMEDICA OSTEONICS CORP. | SECTION A(5) |

## ORDER AND REASONS

Before the Court is a **Rule 12(b)(6) Motion to Dismiss Counterclaim (Rec. Doc. 13)** filed by Plaintiff Hiram Investments, LLC ("Hiram"). Defendant Howmedica Osteonics Corp. ("Stryker") opposes the motion. (Rec. Doc. 14).[1] Hiram replied to the opposition (Rec. Doc. 22) and Stryker has filed a sur-reply. (Rec. Doc. 20). The motion, set for submission on February 21, 2018, is before the Court on the briefs without oral argument.[2] This matter is set as a bench trial to commence on October 3, 2018. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that Hiram's motion is **DENIED** for the reasons set forth below.

**I.  Background**

The parties bring suit in this Court pursuant to 28 U.S.C. § 1332—diversity jurisdiction. Plaintiff Hiram alleges that it is a Louisiana Limited Liability Company with its principal place of business in Louisiana. (Rec. Doc. 1, p. 1, ¶ 1). Defendant Stryker is alleged to be a limited liability company, having its domicile and principal place of business in Mahwah, New Jersey. *Id.* at ¶ 2.[3]

---

[1] Howmedica Osteonics Corporation is a subsidiary of the Stryker Corporation, a medical technology company. According to the pleadings filed by counsel, Defendant is referred to as "Stryker."
[2] Hiram has requested oral argument, but the Court is not persuaded that oral argument would be helpful.
[3] The Court finds that the amount in controversy exceeds the jurisdictional threshold amount of $75,000.00.

The following well-pleaded facts, which must be viewed as true under the applicable legal standard, are taken from Stryker's counterclaim. On January 1, 2017, Stryker assumed the lease between Hiram and a third party, Inmotion Medical Resources, LLC, for the property located at 2323 Bainbridge Street in Kenner, Louisiana (the "Leased Premises"). Pursuant to the Commercial Gross Lease Agreement through the Assignment and Assumption of the Lease & Amendment (hereinafter collectively referred to as the "Lease Agreement"), Hiram, as lessor, was responsible for, among other things, maintaining the roof and outside walls of the Leased Premises. *See* (Rec. Doc. 13-2, p. 4, ¶ 17) (the Lease Agreement).

In January of 2017, immediately upon taking possession of the Leased Premises, Stryker noticed significant water intrusion after inclement weather. Stryker immediately notified Hiram of the water intrusion. Upon being notified, Hiram sent its repairmen to the Leased Premises, who erroneously determined that the leak was caused by the air conditioning unit. Stryker then contracted with an independent HVAC repair company who inspected the Leased Premises and determined that the leak was caused by the roof and not the air conditioner.[4] Hiram allegedly failed to make the necessary repairs to the roof. Subsequently, each time it rained, there was water intrusion. In April of 2017, after another rainstorm, the water intrusion was so severe that it flooded Stryker's offices, damaged equipment, furniture, interior walls, and Stryker's medical inventory. Stryker alleges that the severe leakage and flooding caused damage to its medical inventory forcing Stryker to dispose of the equipment due to water infiltration. The inventory had a retail value of approximately $1,057,199.00.

---

[4]Stryker alleges that the repairman's determination that the leak was caused by the air conditioning unit was erroneous. Stryker believes that the leak was caused by a defect in the roof. The Court notes that at this 12(b)(6) motion stage it must consider as true all of Stryker's well-pleaded facts from the counterclaim. The Court understands that the cause of the leak is a question of fact that may be decided at a later stage.

On April 30, 2017, Hiram was again placed on notice of the roof leakage and the damages, and failed to make the necessary repairs. In May of 2017, Hiram's foreman was sent to the Leased Premises by Hiram's property manager. The foreman inspected the damage after another rainstorm and determined that the water intrusion was due to improper construction of the exterior of the Leased Premises and the downspouts. After each rain event, Hiram was provided notice, photographs, and videos of the damage to the Leased Premises. Stryker argues that Hiram's alleged refusal to make the necessary repairs was a material breach of the Lease Agreement.

Stryker further argues that pursuant to Paragraph 8 of the Lease Agreement, Hiram was obligated to maintain a commercial general liability policy naming Stryker as an additional insured. Hiram allegedly failed to name Stryker as an additional insured, which Stryker contends is also a material breach of Hiram's Lease obligations.

On August 10, 2017, formal written notice was sent to Hiram regarding its material breach of the Lease. Stryker contends that Hiram is indebted to Stryker for its damaged inventory in the amount of approximately $1,057,199.00 plus damages for its other property losses. Stryker also asks this Court to find Hiram indebted to Stryker for the return of the security deposit, the prepayment of the last two months of rent, and reasonable attorney's fees pursuant to the terms of the Lease. (Rec. Doc. 9).

## II. Legal Standard

Under well-settled standards governing Rule 12(b)(6) motions to dismiss, a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (citing *Benton v. United States*, 960 F.2d 19 (5th Cir. 1992)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculation level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

**III.    Law and Analysis**

Hiram's motion seeks to dismiss Stryker's counterclaim on the basis that Stryker waived any claim for property damage against its landlord (Hiram) in Paragraph 30 of the Lease. (Rec. Doc. 13-1, p. 4). Hiram argues that the following provision from the Lease constitutes a waiver of any and all claims that Stryker may have against Hiram for property damage, regardless of any alleged negligence on the part of Hiram:

> 30) SUBROGATION: *Neither the Lessor nor the Lessee shall be liable to the other for the loss arising out of damage to or destruction of the Premises or the building or improvements of which the Premises are a part thereof, when such loss is caused by any of the perils which are or could be included within or are insured against by a standard form of fire insurance with extended coverage, including sprinkler leakage insurance, if any. All such claims for any and all loss, however caused,*

4

> *hereby are waived. Said absence of liability shall exist whether or not the damage or destruction is caused by the negligence of either Lessor or Lessee or by any of their respective agents, servants or employees.* It is the intention and agreement of the Lessor and the Lessee that the rentals reserved by this Lease have been fixed in contemplation that each party shall fully provide his own insurance protection at his own expense, and that each party shall look to his respective agents, servants or employees. It is the intention and agreement of Lessor and the carriers involved shall not be entitled to subrogation under any circumstances against any party to this lease. Neither the Lessor nor the Lessee shall have any interest or claim in the other's insurance policy or policies, or the proceeds thereof, unless specifically covered therein as a joint assured.

(Rec. Doc. 13-2, p. 6) (emphasis added). According to Hiram, this clause prevents recovery as Stryker's alleged losses (destruction of medical equipment) arise out of damages to the Leased Premises (alleged water leakage) and the loss was caused by a peril that could be insured "against by a standard form of fire insurance with extended coverage, including sprinkler leakage insurance, if any." *Id.*

In support of this argument, Hiram cites the Louisiana Fifth Circuit Court of Appeal's decision in *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 96 So.3d 1248 (La. App. 5 Cir. 2012). In that case, a subrogation clause, nearly identical to the one currently at issue, precluded a lessee from recovering against its landlord for losses to personal property that lessee suffered as a result of fire damage to the property. The relevant portion of that clause stated as follows:

> 28. SUBROGATION: Neither the Lessor nor the Lessee shall be liable to the other for the loss arising out of damage to or destruction of the leased premises, or the building or improvements of which the leased premises are a part thereof, when such lost [sic] is caused by any of the perils which are or could be included within or are insured against by a standard form of fire insurance with extended coverage, including sprinkler leakage insurance, if any. All such claims for any and all loss, however caused, hereby are waived. Said absence of liability shall exist whether or not the damage or destruction is caused by the negligence of either lessor or . . . any of their respective agents, servants, or employees.

5

*Id.* at 1250. The Louisiana Fifth Circuit found that under this mutual waiver clause, the lessee consented to waiving any claims against lessor for losses suffered as a result of damage or destruction of the leased premises.

In opposition, Stryker distinguishes *Certified Cleaning* from the instant case by noting that the damage in *Certified Cleaning* arose out of a fire in the leased building while the damage to Stryker's medical equipment in the instant case resulted from alleged water leakage in the roof, flooding, and Hiram's negligence in failing to repair the roof. (Rec. Doc. 14, p. 3). Stryker's reply acknowledges that the waiver provision in Lease Paragraph 30 applies to perils that could be included in a fire policy with extended coverage, but notes that roof defects and failing to make repairs are not "perils" that can be included in such a policy. (Rec. Doc. 22, p. 2). Hiram goes on to argue that the "extended coverage" language covers perils beyond fire damage to include damages caused by rain, flooding, or other severe weather conditions. In short, Hiram contends that both "rain" and "fire" are perils that may be insured against in a "standard form of fire insurance with extended coverage," and therefore, the waiver provision applies. (Rec. Doc. 22, pp. 2–3).

The Court finds merit in Stryker's arguments in defense of its claim. First, the Court agrees that *Certified Cleaning* is distinguishable from the case currently before this Court. In *Certified Cleaning*, a roofer accidently started a fire causing damage to the building. Such an incident was precisely the type of incident covered in the "SUBROGATION" clause at issue in *Certified Cleaning*. *See Certified Cleaning*, 96 So.3d at 1250. In the case at hand, Stryker does not allege that the roof damage was caused by accident or negligence, but by a deliberate failure to fix a defect in the roof after being put on notice.

The allegations set out in Stryker's counterclaim do not claim that the damage was caused by a single episode of severe weather. Rather, Stryker alleges Hiram's persistent refusal to repair the roof was the primary cause of the damage. The Court agrees with Stryker when holding that a landlord's failure to make necessary repairs is not a peril "which . . . could be included within . . . a standard form of fire insurance with extended coverage, including sprinkler leakage insurance, if any" as contemplated by Paragraph 30. (Rec. Doc. 13-2, p. 6).

According to Stryker's alleged facts, which the Court must view as true at this stage, Hiram's alleged failure to repair the roof did constitute a breach of the Lease because Hiram was required to maintain and repair the roof under Paragraph 17 of the Lease. Paragraph 17 provides, in relevant part:

> 17) CONDITION AND UPKEEP OF PREMISES: . . . Lessor shall be responsible only to maintain the roof, foundations, and outside walls (not including doors and floors). . . . Lessor shall not be liable for any damages or loss in consequences of defects in the Premises causing leaks, stoppage of water, sewer or drains or any other defects about the building and Premises, *unless it shall have failed to repair defects for which it is responsible within a reasonable time following written demand of Lessee to do so.*

(Rec. Doc. 13-2, p. 4) (emphasis added).

The Court finds that Stryker's counterclaim sufficiently states a cause of action. Stryker provides well-pleaded facts that may entitle it to relief. The alleged facts provided in Stryker's counterclaim fall squarely within the confines of Paragraph 17 of the Lease. Reading Paragraph 17 in conjunction with Paragraph 30, it appears that Paragraph 30 contemplates situations in which an unexpected occurrence, such as severe weather episodes, flooding, or a spontaneous fire caused by accident or negligence, results in damage to the Leased Premises. Paragraph 30 goes further to state that no liability shall exist "whether or not the damage or destruction is caused by the

negligence of either Lessor or Lessee or by any of their respective agents, servants or employees." (Rec. Doc. 13-2, p. 6).

However, what Stryker alleges in its counterclaim is not mere negligence in failing to fix the roof, but rather, a deliberate failure to repair the roof after being put on notice that the roof was faulty. Such a situation is covered in the language of Paragraph 17. (Rec. Doc. 13-2, p. 4) (stating that Lessor shall be responsible to maintain the roof, but will not be liable for damages caused by leaks in the Leased Premises "unless [Lessor] shall have failed to repair defects for which [Lessor] is responsible within a reasonable time following written demand of Lessee to do so.").

The Court agrees with Plaintiff in finding that Paragraph 9b of the Assignment and Assumption is inapplicable as that Paragraph's language does not specify that the obligation to indemnify covers first party claims asserted between the indemnitor and the indemnitee. That Paragraph provides, in relevant part:

> b. <u>Landlord's Indemnification</u>. Notwithstanding any other provision in this Lease, *Landlord [Hiram] shall indemnify, defend and hold harmless Tenant [Stryker] . . . from . . . all losses . . . arising from Landlord's use, maintenance, occupancy or ownership of the Building and Common Areas* or from the conduct of its business or from any activity, work, or other act or things done, permitted or suffered by Landlord in or about the Building, Common Areas, or Premises, *or arising from any environmental condition at the Building that arose on or prior to the Commencement Date, or arising from any breach or default in the performance of any obligation on Landlord's part to be performed under the terms of this Lease, or arising from the negligence or willful or criminal misconduct of Landlord, or any officer, agent, employee, independent contractor, guest, or invitee thereof,* and from all costs, reasonable attorney fees and disbursements, and liabilities incurred in the defense of any such claim or any action or proceeding which may be brought against, out of or in any way related to this Lease, provided, however, that this indemnity shall not apply where due to Tenant's negligence or willful misconduct. The provisions of this Section shall survive the expiration or sooner termination of this Lease.

(Rec. Doc. 13-3, p. 4) (emphasis added). The Court cannot say that this provision's language contemplates a circumstance in which the landlord would be required to indemnify the tenant when

8

the tenant directly brings suit against the landlord—*i.e.*, a first-party claim. Rather, the provision contemplates a situation in which the landlord must indemnify and defend the tenant when suit is brought against the tenant by a third-party for losses that occurred due to the landlord's actions. The Court finds Hiram's application of Judge Feldman's reasoning in *New Orleans Baseball, Inc. v. Moore*, to be on point. No. 93–253, 1993 WL 322984, *1 (E.D. La. Aug. 18, 1993).

Finally, the Court acknowledges that there are many outstanding questions of fact that, once decided, could have a significant impact on interpreting the contract. For example, questions of what caused the leak, where the leak originated, when Hiram was put on notice of the leak and in what manner it was put on notice, and whether Hiram actually made an effort to fix the leak are all questions of fact that may alter the course of this litigation once discovered. However, at this early stage of litigation, the Court views Stryker's allegations as true and finds that it has sufficiently pleaded a cause of action for which relief can be granted.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion is denied.

Accordingly;

IT IS ORDERED that Plaintiff's **Rule 12(b)(6) Motion to Dismiss Counterclaim (Rec. Doc. 13)** is **DENIED**.

April 23, 2018

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE